IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| HUELER INVESTMENT SERVICES, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| FMR CORP., FIDELITY INVESTMENTS LIFE INSURANCE COMPANY, FIDELITY BROKERAGE SERVICES LLC, FIDELITY INSURANCE AGENCY, INC. | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

Civil Action No.:  *06-4600 ADM/AJB*

## COMPLAINT

Plaintiff Hueler Investment Services, Inc. ("Plaintiff" or "Hueler") for its complaint against Defendants FMR Corp., Fidelity Investments Life Insurance Company, Fidelity Brokerage Services LLC, and Fidelity Insurance Agency, Inc. (each a "Defendant" and collectively the "Defendants"), states the following:

### NATURE AND SUMMARY OF THE ACTION

1.      This is an action at law and in equity for service mark infringement under sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114 and 1125; reverse confusion; and dilution, unfair competition, and unfair and deceptive trade practices under the statutes and common law of the various states, including of Minnesota. This action arose by reason of Defendants' unauthorized and intentionally infringing use of a service mark that is likely to be confused with Plaintiff's service mark. Plaintiff seeks injunctive relief,

**SCANNED**

NOV 2 2 2006
U.S. DISTRICT COURT MPLS

an accounting of Defendants' profits, and Plaintiff's actual damages, punitive damages, and Plaintiff's costs and reasonable attorney fees.

## THE PARTIES

2.      Hueler is a corporation organized and existing under the laws of the state of Minnesota with its principal place of business located at 10400 Viking Drive, Suite 510, Eden Prairie, Minnesota 55344.

3.      Defendant FMR Corp. is a corporation organized and existing under the laws of the state of Delaware with its principal place of business located at 82 Devonshire Street, Boston, Massachusetts  02109.  FMR Corp. may be served with process on its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

4.      Fidelity Investments Life Insurance Company, is a corporation organized and existing under the laws of the state of Utah with its principal place of business located at 175 East 400 South #200, Salt Lake City, Utah  84111.  Fidelity Investments Life Insurance Company may be served with process on its registered agent, CT Corporation System, 136 East South Temple, Suite 2100, Salt Lake City, Utah  84111.

5.      Fidelity Brokerage Services LLC, is a limited liability company organized and existing under the laws of the state of Delaware with its principal place of business located at 82 Devonshire Street, Boston, Massachusetts  02109.  Fidelity Brokerage Services LLC may be served with process on its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

2

6.   Fidelity Insurance Agency, Inc. is a corporation organized and existing under the laws of the state of Massachusetts with its principal place of business located at 82 Devonshire Street, Boston, Massachusetts 02109.

7.   Each of the Defendants have acted in concert with each other in connection with the conduct alleged in this Complaint in a joint effort to infringe Plaintiff's rights and to cause Plaintiff injury.

## JURISDICTION AND VENUE

8.   This Court has subject matter jurisdiction over this dispute under 28 U.S.C. §§ 1331 and 1338 because this suit arises under the federal Lanham Act and relates to trademarks.   The Court also has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

9.   This Court has personal jurisdiction over Defendants because Defendants transact business within this state, have caused tortious injury to Plaintiff within this state, and/or a substantial part of the events giving rise to the claims occurred in this state.

10.   Venue is proper in this district under 28 U.S.C. §§ 1391(b) because Defendants do business in this district, a substantial part of the events giving rise to the claims occurred in this district, and Defendants or its agents may be found in this district.

## HUELER AND ITS INCOME SOLUTIONS MARK

11.   Founded in 1987, Hueler is a leading technology and research company focused on the stable value and annuity investment marketplace.

12.   In the late 1990s, Hueler's research suggested that there would be an increased demand for annuity services.

3

13.     Based upon Hueler' market knowledge, technology, and established relationships with key insurance companies and corporate plan sponsors, coupled with the growing need in the market for annuity services, Hueler developed a unique program to assist employees with converting a portion of their retirement savings into retirement income through the purchase of institutionally priced immediate annuities with their rollover IRA assets.  Beginning at least as early as July 1, 2004, Hueler used the INCOME SOLUTIONS mark—a suggestive mark—to identify its program.

14.     Hueler's INCOME SOLUTIONS program brings together multiple insurance companies that offer immediate annuities and allows employers to offer their employees the opportunity to receive institutionally priced competitive quotes on standardized terms from each of the participating annuity issuers either within their retirement plan or through a rollover IRA.

15.     Since adopting its INCOME SOLUTIONS mark in 2004, Hueler has invested substantial time, effort, and money in advertising, marketing, and promoting its INCOME SOLUTIONS mark and the services provided under its INCOME SOLUTIONS mark.  Hueler's INCOME SOLUTIONS mark is widely recognized by Hueler's customers and potential customers for quality and innovation.  As a result of Hueler's use of the INCOME SOLUTIONS mark, the mark become widely and favorably recognized as an indicator of the origin of the services provided by Hueler.

16.     As a result of the extensive use and promotion of Hueler's INCOME SOLUTIONS mark in interstate commerce, Hueler owns valuable goodwill that is symbolized by the INCOME SOLUTIONS mark.  The relevant potential purchasers have

4

come to associate Hueler's INCOME SOLUTIONS mark as identifying services created, distributed, authorized, or licensed exclusively by Hueler.   As a result, Hueler's INCOME SOLUTIONS mark serves as a strong source identifier throughout the United States.

17.    On March 15, 2005,   Hueler obtained a federal trademark registration (Registration No. 2,933,664) for its INCOME SOLUTIONS mark covering "investment services, namely, financial transaction processing and annuity services and providing on-line financial transaction processing and annuity services" (the "INCOME SOLUTIONS Registration").

18.    In accordance with 15 U.S.C. § 1057(b), Hueler's INCOME SOLUTIONS Registration constitutes prima facie evidence of the validity of the INCOME SOLUTIONS mark, of Hueler's ownership of the INCOME SOLUTIONS mark, and of Hueler's exclusive right to use the INCOME SOLUTIONS mark in commerce on or in connection with the services identified in the registration.

19.    In accordance with 15 U.S.C. § 1057(c), Hueler's filing, on October 10, 2002, of the application that matured into the INCOME SOLUTIONS Registration constituted constructive use of the mark and conferred upon Hueler a right of priority, nationwide in effect, in connection with the services specified in the registration.

### DEFENDANTS AND THEIR INFRINGING ACTIONS

20.    Defendants are dominant participants in the investment, insurance, and retirement markets and do business throughout the United States. Defendants act as plan

administrators and record keepers, investment brokers, and trustees for numerous companies' employee retirement plans.

21.    Defendants had actual knowledge of Hueler's use of the INCOME SOLUTIONS mark by, among other things, illegally accessing in early 2005 restricted portions of Hueler's website in which the INCOME SOLUTIONS mark was used.

22.    On July 20, 2005, Defendant FMR Corp., through its attorneys, filed a federal trademark application for the mark FIDELITY LIFETIME INCOME SOLUTIONS, which was published for opposition on April 4, 2006, and at that time covered "financial investment in the field of annuities; investment of funds for others; providing information about investments and annuities," based on a bona fide intent to use the mark in interstate commerce. This application was given Serial No. 78/674,728 by the Patent and Trademark Office (the "Fidelity Application").

23.    On August 1, 2006, Hueler, through its attorneys, filed a notice of opposition against registration of the Fidelity Application on the grounds that the FIDELITY LIFETIME INCOME SOLUTIONS mark is likely to be confused with Hueler's INCOME SOLUTIONS mark. Defendant FMR Corp. filed an answer and counterclaim on September 8, 2006, to which Hueler answered on October 12, 2006.

24.    In a press release dated October 3, 2006 (the "Fidelity Press Release"), Defendants "announced the availability of Fidelity Lifetime Income Solutions[SM] (FLIS), an out-of-plan annuities selection program designed to help plan sponsors provide employees a way to convert a portion of their retirement savings into a guaranteed lifetime income stream." A copy of this press release is attached as Exhibit A.

6

25. Defendants have adopted and used the mark FIDELITY LIFETIME INCOME SOLUTIONS in connection with annuities and services designed for plan sponsors to offer annuities as part of a retirement investment strategy.

26. Defendant Fidelity Investments Life Insurance Company issues and markets annuity products sold under the FIDELITY LIFETIME INCOME SOLUTIONS mark.

27. Defendant Fidelity Insurance Agency, Inc. distributes annuity products sold under the FIDELITY LIFETIME INCOME SOLUTIONS mark.

28. Defendant Fidelity Brokerage Services distributes annuity products sold under the FIDELITY LIFETIME INCOME SOLUTIONS mark.

29. Defendants are offering products and services intended to compete directly with Plaintiff, are targeting the same potential customers as Plaintiff does, and are using the same channels of trade as used by Plaintiff. Defendants' use of a mark that exactly and completely incorporates Plaintiff's mark under these circumstances renders confusion of the public virtually inevitable.

30. Defendants acted with full knowledge of Plaintiff's rights and without regard to the likelihood of confusion of the public created by Defendants' conduct

31. Defendants' conduct has affected and will continue to affect interstate commerce.

7

## COUNT I
## FEDERAL SERVICE MARK INFRINGEMENT  UNDER 15 U.S.C. § 1114

32. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 31 as if fully set forth herein.

33. Defendants' unauthorized use a confusingly similar imitation of Hueler's INCOME SOLUTIONS mark is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' products and services are affiliated, associated, or connected with Hueler or are sponsored, endorsed, or approved by Hueler.

34. Defendants have made and are making false representations, false descriptions, and false designations of origin of its products and services in violation of 15 U.S.C. § 1114 and is causing, and unless enjoined by this Court will continue to cause, a likelihood of confusion and deception of members of the consuming public and additionally, injury to Hueler's goodwill and reputation as symbolized by Hueler's INCOME SOLUTIONS mark, for which Hueler has no adequate remedy at law.

35. Defendants' actions demonstrate an intentional, willful, malicious, and bad faith intent to trade on the goodwill associated with Hueler's INCOME SOLUTION mark and damage the value of Hueler's INCOME SOLUTIONS mark.

36. Defendants are causing and are likely to continue to cause substantial injury to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief and to recover Defendants' profits and Plaintiff's actual damages, costs, and reasonable attorneys fees in accordance with 15 U.S.C. §§ 1114, 1116, and 1117.

## COUNT II
## FEDERAL UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)

37.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 36 as if fully set forth herein.

38.     Defendants have made and are making false representations, false descriptions, and false designations of origin of its products and services in violation of 15 U.S.C. § 1125(a) and is causing, and unless enjoined by this Court will continue to cause, a likelihood of confusion and deception of members of the consuming public and additionally, injury to Hueler's goodwill and reputation as symbolized by Hueler's INCOME SOLUTIONS mark, for which Hueler has no adequate remedy at law.

39.     Defendants' actions demonstrate an intentional, willful, malicious, and bad faith intent to trade on the goodwill associated with Hueler's INCOME SOLUTION mark and damage the value of Hueler's INCOME SOLUTIONS mark.

40.     Defendants are causing and are likely to continue to cause substantial injury to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief and to recover Defendants' profits and Plaintiff's actual damages, costs, and reasonable attorneys fees in accordance with 15 U.S.C. §§ 1114, 1116, and 1117.

## COUNT III
## REVERSE CONFUSION

41.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 40 as if fully set forth herein.

42.     Due to Defendants' dominance in the industry and vast and extensive advertising resources, Defendants will swamp Hueler's reputation in the market so that

9

consumers, the trade, and the public are likely to be confused into thinking that Defendants are the owners of the INCOME SOLUTIONS mark and that Hueler's INCOME SOLUTIONS services are those of Defendants, or are licensed by Defendants, resulting in reverse confusion.

43.     Defendants' actions demonstrate an intentional, willful, malicious, and bad faith intent to trade on the goodwill associated with Hueler's INCOME SOLUTION mark and damage the value of Hueler's INCOME SOLUTIONS mark.

44.     Defendants are causing and are likely to continue to cause substantial injury to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief and to recover Defendants' profits and Plaintiff's actual damages, costs, and reasonable attorneys fees in accordance with 15 U.S.C. §§ 1114, 1116, and 1117.

COUNT IV
COMMON LAW UNFAIR COMPETITION

45.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 44 as if fully set forth herein.

46.     Defendants have engaged in common law service mark infringement and unfair competition that has crated and will continue to create a likelihood of confusion to the irreparable injury of Plaintiff unless restrained by this Court.  Hueler has no adequate remedy at law for this injury.

47.     Defendants acted with full knowledge of Plaintiff's statutory and common law rights to Hueler's INCOME SOLUTIONS mark and without regard to the likelihood of confusion of the public created by Defendants' conduct.

48.     Defendants have passed off their products and services as those of Hueler, who are likely to believe mistakenly that Defendants' services are authorized by Hueler.

49.     Defendants' actions demonstrate an intentional, willful, malicious, and bad faith intent to trade on the goodwill associated with Hueler's INCOME SOLUTION mark and damage the value of Hueler's INCOME SOLUTIONS mark, all to the great and irreparable injury of Plaintiff.

50.     As a result of Defendants' conduct Hueler has been damaged in an amount not as yet determined or ascertainable.   At a minimum, Hueler is entitled to injunctive relief , to an award of Defendants' profits, and to an award of Hueler's actual damages, costs, and reasonable attorneys fees.   In light of the deliberately fraudulent and malicious violation of Hueler's rights, Hueler additionally is entitled to punitive damages.

## COUNT V
## STATE TRADEMARK DILUTION

51.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 50 as if fully set forth herein.

52.     Hueler's INCOME SOLUTIONS mark is distinctive and strong and became so prior to Defendants' use of its FIDELITY LIFETIME INCOME SOLUTIONS mark.

53.     Defendants' conduct dilutes and is likely to dilute the distinctiveness of Hueler's INCOME SOLUTIONS mark by eroding the public's exclusive identification of the mark with Hueler, tarnishing and degrading the positive associations and prestigious

connotations of the mark, and otherwise lessening the capacity of the mark to identify and distinguish Hueler's services.

54.     Defendants are causing and will continue to cause irreparable injury to Hueler's goodwill and business reputation, and is destroying the value of Hueler's INCOME SOLUTIONS mark.

55.     Defendants' actions demonstrate an intentional, willful, malicious, and bad faith intent to trade on the goodwill associated with Hueler's INCOME SOLUTION mark or to cause dilution of the INCOME SOLUTIONS mark, to the great and irreparable injury of Hueler.

56.     Defendants' actions constitute a violation of the antidilution laws of the several states, including Alabama, ALA. CODE § 8-12-17 (2002); California, CAL. BUS. & PROF. CODE § 14330 (West 1987 & Supp. 2006); Delaware, DEL. CODE ANN. tit. 6, § 3313 (2005); Georgia, O.C.G.A. § 10-1-451 (2000); Iowa, IOWA CODE ANN. § 548.113 (West 1997); Louisiana, LA. REV. STAT. ANN. § 51:223.1 (2003); Maine, ME. REV. STAT. ANN. tit. 10, § 1530 (West 1997); Massachusetts, MASS. GEN. LAWS. ANN. ch. 110H, § 13 (West 2003); Minnesota, MINN. STAT. ANN. § 333.285 (West 2004); Missouri, MO. ANN. STAT. § 417.061(1) (West 2001); Montana, MONT. CODE ANN. § 30-13-334 (2005); Nebraska, NEB. REV. STAT. ANN. §87-140 (LexisNexis 2003); New Hampshire, N.H. REV. STAT. ANN. § 350-A:12 (1995); New York, N.Y. GEN. BUS. Law § 360-l (McKinney Supp. 2004); OR. REV. STAT. ANN. § 647.107 (West 2003);   Rhode Island, R.I. GEN. LAWS

12

§ 6-2-12 (2001); Texas, TEX. BUS. & COM. CODE ANN. § 16.29 (Vernon 2002); and Washington, WASH. REV. CODE ANN. § 19.77.160 (West 1999 & Supp. 2006).

57.     As a result of Defendants' conduct, Defendants are causing and are likely to continue to cause substantial injury to Plaintiff, and Plaintiff is entitled to injunctive relief and other appropriate relief.

COUNT VI
UNFAIR AND DECEPTIVE TRADE PRACTICES

58.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 57 as if fully set forth herein.

59.     Defendants have been and are passing off their products and services as those of Hueler, causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of Defendants' products and services, causing a likelihood of confusion as to Defendants' affiliation, connection, or association with Hueler, and otherwise damaging the public.

60.     Defendants' conduct constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of the unfair and deceptive trade practices statutes of the various states, including Colorado, COLO. REV. STAT. ANN. §§ 6-1-101 to 6-1-115 (West 2002 & Supp. 2006); Delaware, DEL. CODE ANN. tit. 6, §§ 2531 to 2536 (2005); Georgia, O.C.G.A. §§ 10-1-370 to 10-1-375 (2000); Hawaii, HAW. REV. STAT. §§ 481A-1 to 481A-5 (1993); Illinois, 815 ILL. COMP. STAT. ANN. 510/1 to 510/7 (2004); Maine, ME. REV. STAT. ANN. tit. 10, §§ 1211 to 1216 (West 1997); Minnesota, MINN. STAT. ANN. § 325D.43 to .48 (West 2004); Nebraska,

13

NEB. REV. STAT. §§ 87-301 to 87-306 (LexisNexis 2003); New Mexico, N.M. STAT. ANN. §§ 57-12-1 to 57-12-24 (West 2003 & Supp. 2006); New York, N.Y. GEN. BUS. Law § 349 (McKinney 2004); Ohio, OHIO REV. CODE ANN. §§ 4165.01 to 4165.04 (West 1999); and Oklahoma, OKLA. STAT. ANN. tit. 78, §§ 51 to 55 (West 2002); and Oregon, OR. REV. STAT. ANN. §§ 646.605 to 646.656 (West 2003 & Supp. 2006).

61.    Defendants' actions demonstrate an intentional, willful, malicious, and bad faith intent to trade on the goodwill associated with Hueler's INCOME SOLUTION mark and damage the value of Hueler's INCOME SOLUTIONS mark.

62.    Defendants are causing and are likely to continue to cause substantial injury to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief and to recover Defendants' profits and actual damages, costs, and reasonable attorneys fees.  Plaintiff will also assert a demand for punitive damages as permitted.

WHEREFORE, Plaintiff prays that:

1.    Defendants and all agents, officers, directors, employees, representatives, attorneys, successors, affiliates, subsidiaries, and assigns, and all those in active concert and participation with Defendants, be enjoined from:

(a)    using Hueler's INCOME SOLUTIONS mark or any copy, reproduction, or colorable imitation or simulation of Hueler's INCOME SOLUTIONS mark in connection with Defendants' products or services;

(b)    using any trademark, service mark, name, logo, design, or source designation of any kind that is a copy, reproduction, colorable imitation, or simulation of or confusingly similar to the trademarks, service marks, names, or logos of Plaintiff, or is

14

likely to cause confusion, mistake, deception, or public misunderstanding that Defendants' products or services are products or services of Plaintiff, or are sponsored by or in any way related to Plaintiff;

(c)     using any trademark, service mark, name, logo, design, or source designation of any kind on or in connection with Defendants' products or services that dilutes or is likely to dilute the distinctiveness of the trademarks, service marks, names, or logos of Plaintiff.

(d)     passing off or palming off Defendants' products or services as those of Plaintiff or otherwise continuing any and all acts of unfair competition as alleged in the Complaint.

(e)     assisting, aiding, or abetting any other person or business entity in engaging or performing any of the activities referred to in subparagraphs (a) through (d) above.

2.     Defendants be compelled to account and be ordered to pay to Plaintiff any and all profits derived by Defendants and all damages caused to Plaintiff under 15 U.S.C. § 1117 and the common law.

3.     Defendants be ordered to distribute corrective advertising to redress the false and misleading statements and representations it has made; or that Plaintiff be awarded an amount sufficient to prepare and disseminate the same, based on an analysis of the resources expended by Defendants in so saturating the market through the use of their infringing mark.

4.    In light of Defendants' willful, deliberate, bad faith, and malicious conduct, that Plaintiff, as permitted under the applicable laws of the various states, be awarded punitive damages.

5.    Plaintiff be awarded its costs and attorney fees.

6.    Plaintiff be awarded interest, including prejudgment interest, on the foregoing sums.

7.    Defendants be ordered to deliver up for destruction all bags, boxes, labels, signs, packages, receptacles, and advertising and promotional material and the like (such as websites) in the possession, custody, or control of Defendants that adopt or infringe any of Plaintiff's trademarks or service marks or that otherwise unfairly compete with Plaintiff and its products or services.

8.    Plaintiff be awarded such other and further relief as the Court may deem just and proper.

[continued on following page]

## JURY TRIAL DEMAND

Plaintiff respectfully demands a trial by jury on all claims and issues so triable.

Respectfully submitted,

William R. Stoeri (MN Bar No. 0140880)
Peter M. Lancaster (MN Bar No. 0159840)
DORSEY & WHITNEY LLP
Suite 1500
50 South Sixth Street
Minneapolis, Minnesota  55402-1498
(612) 340-2600 (telephone)
(612) 340-2868 (facsimile)

Of Counsel:
Judith A. Powell
Alex S. Fonoroff
KILPATRICK STOCKTON LLP
Suite 2800
1100 Peachtree Street
Atlanta, Georgia  30309-4530
(404) 815-6500 (telephone)
(404) 815-6555 (facsimile)

Attorneys for Plaintiff

17



News Release Archive > Employer Services >

**News Release**           **For Immediate Release**

## Fidelity Investments Launches Fidelity Lifetime Income Solutions

### Out-of-Plan Annuities Selection Program Helps Plan Sponsors Provide 401(k) Participants with Pension-like Payout Options

BOSTON, October 3, 2006 - In response to employer concerns about the long-term retirement security of their employees, Fidelity Investments today announced the availability of Fidelity Lifetime Income Solutions[SM] (FLIS), an out-of-plan annuities selection program designed to help plan sponsors provide employees a way to convert a portion of their retirement savings into a guaranteed lifetime income stream.[1]

"401(k) plan participants need to be focused on effectively managing savings throughout their retirement, which is why annuitizing a portion of their 401(k) savings to provide guaranteed retirement income may make sense for a growing number of American workers," said Jeffrey R. (Jeff) Carney, president, Fidelity Institutional Retirement Services Company (FIRSCo).

*How FLIS works*

**To make it easier for employers to offer their 401(k) participants a guaranteed, defined benefit-like payout option upon retirement, Fidelity[2] developed the FLIS program. Based on Fidelity's nearly 20 years of industry-leading experience as an insurance provider, FLIS is an out-of-plan annuity selection program designed to simplify the annuity buying process for participants, while making it easy for plan sponsors to provide their participants an annuity payout option with no administrative burden and at no cost to plan sponsors.**

**Among its many benefits, FLIS assists plan sponsors and employees with the important task of selecting and monitoring an annuity provider by pre-screening insurance carriers for creditworthiness, strength of management, long-term capacity and competitive design.**

**In addition to pre-screening, FLIS ensures that participating carriers compete on every fixed-income annuity quote, which can help employees get better payouts. Because income needs vary greatly based on an individual's specific circumstances, FLIS also makes a range of annuity lifetime income solutions available, including fixed, variable income and combination annuities.**

**To help employees determine whether an annuity lifetime income solution is right for them, how much of their savings they may wish to convert, which type of annuity best suits their needs and how to take next steps, FLIS provides employees with comprehensive educational materials, planning tools and access to experienced, non-commissioned annuity specialists.**

*Annuities can help American workers mitigate key retirement savings risks*

**"The reality is that Americans are living longer than ever before, which means that their retirement savings increasingly must extend for longer periods of time," said Carney. "In fact, there is a 50 percent chance that at least one member of a healthy, 65-year-old couple today will live to 92.[3] Given such increased longevity, it may make sense for more Americans to consider annuities as insurance against the risk of outliving their assets."**

**Purchasing an annuity allows investors to effectively pass key retirement income risks along to an insurance company. The retiree pays an insurance company a lump-sum premium, and in return, the insurance company agrees to pay the annuitant guaranteed income.**

**EXHIBIT A**



According to Fidelity Strategic Advisers®, Inc., converting no more than 30 percent of retirement assets into an annuity can successfully help retirees protect against key retirement savings risks such as increased longevity, fluctuating investment returns and inflation, without risking liquidity needs and long-term growth.

*Newer annuity offerings feature increased transparency, lower costs*

While all annuities made available through the FLIS program are designed to be transparent and low cost, Carney noted that it is important for employees to understand that there are different types of annuities, each of which help meet different investment needs and preferences.

Fixed annuities, for example, guarantee a fixed payment for a specific period of time or a lifetime, allowing employees to know exactly what their payment will be every month[4] and how long it will last.

Variable income annuities, by comparison, provide lifetime income that varies based on the performance of the underlying annuity funds selected by an employee. Variable annuities may generate higher income payments over time if the funds perform well, making them a good choice for employees looking for increasing income and/or a potential hedge against inflation.[5]

The FLIS program also offers a combination annuity offering, which provides both fixed and variable income payments. Combination annuities provide employees with a fixed income base payment that stays the same, as well as a variable portion with the potential to increase income if investment performance is favorable.

About Fidelity Investment Life Insurance Services Company

Established in 1987, Fidelity Investments Life Insurance Company (FILI) and for NY residents, Empire Fidelity Investments Life Insurance Company®, NY, NY, develop and markets their own insurance products, in addition to distributing those of other high-quality insurers. These products are made available to investors through FILI's internal distribution arm, Fidelity Insurance Agency, Inc. (FIA). FILI maintains an AA (very strong, 2nd highest) rating from S&P and an A+ (superior, 2nd highest) rating from A.M. Best.[6]

About Fidelity Investments

Fidelity Investments is one of the world's largest providers of financial services, with custodied assets of more than $2.7 trillion, including managed assets of $1.3 trillion as of August 31, 2006. Fidelity offers investment management, retirement planning, brokerage, and human resources and benefits outsourcing services to more than 22 million individuals and institutions as well as through 5,500 financial intermediary firms. The firm is the largest mutual fund company in the United States, the No. 1 provider of workplace retirement savings plans, one of the largest mutual fund supermarkets and a leading online brokerage firm. For more information about Fidelity Investments, visit www.fidelity.com.

[1]Guarantees are subject to the claims-paying ability of the issuing insurance company.

[2]Fidelity refers to Fidelity Insurance Agency, Inc.

[3]Society of Actuaries 2000 Annuitant Mortality Table.

[4]Fixed annuities may not keep pace with inflation.

[5]Principal value, income payments and investment returns of a variable annuity will fluctuate and investors may have a gain or loss when money is received. Taxable amounts withdrawn prior to age 59 ½ may be subject to a 10 percent IRS penalty.



[6] S&P rating reflects solid position in the variable annuity market, operating performance, capitalization, liquidity and investment quality, 1/06. A.M. Best rating reflects company's financial strength, 9/06.

**Before investing, consider the investment objectives, risks, charges and expenses of the annuity and its investment options. Call or write to Fidelity or visit Fidelity.com for a free prospectus containing this information. Read it carefully.**

Annuities are issued by Fidelity Life Insurance Company and in NY, Empire Fidelity Investments Life Insurance Company®. Some annuities are issued by third-party carriers. Fidelity Brokerage Services, Member NYSE, SIPC and Fidelity Insurance Agency, Inc. are the distributors.

# # #

**Fidelity Brokerage Services, Member NYSE, SIPC**

**Fidelity Investments Institutional Services Company LLC**
**82 Devonshire Street, Boston MA 02109**

#443975



© Copyright 1998-2003 FMR Corp.
All rights reserved.
Terms of Use.



**WILLIAM R. STOERI**
(612) 343-7942
FAX (612) 340-8800
stoeri.bill@dorsey.com

November 22, 2006

United States District Court Administrator          **VIA MESSENGER**
202 United States District Courthouse
300 South Fourth Street
Minneapolis, MN 55415

      Re:    Hueler Investment Services, Inc., v. FMR Corp., et al.

Dear Court Administrator:

      Enclosed herewith for filing please find the following documents:

1. Complaint;

2. Civil Cover Sheet; and

3. Our check in the amount of $350.00.

      Also enclosed are the following summons for signature and seal:

1. Summons directed to FMR Corp.;

2. Summons directed to Fidelity Investments Life Insurance Company;

3. Summons directed to Fidelity Brokerage Services LLC;

4. Summons directed to Fidelity Insurance Agency, Inc.;

      Please call me if you have any questions.

                Sincerely,

                William R. Stoeri

Enclosures
cc:    FMR Corp.
      Fidelity Investments Life Insurance Company
      Fidelity Brokerage Services LLC
      Fidelity Insurance Agency, Inc.